Good morning. My name is Vicki Morope-Cannon. I'm here on behalf of Alan Flesher. I would like to reserve two minutes. Mr. Flesher pleaded guilty to conduct that did not constitute the crime charged. He pleaded guilty to sending out fraudulent revenue statements. However, those fraudulent revenue statements were outside the statute of limitations and could not have been charged as a crime in this case. Counsel, this is a very unusual guilty plea, but it struck me that he was admitting that he did the acts that were within the statute of limitations, but he claimed that they weren't fraudulent. So he didn't say, well, that wasn't me, or I was in a coma then. He did the things, he just thought they weren't illegal. And I'm not sure where we take that. You know, if someone says, well, I was at the bank and I asked the teller for money, but it really wasn't bank robbery because I didn't keep the money, I gave it to charity, can that be a guilty plea? That's a guilty plea for bank robbery, even though the person says, well, I was there, I did that thing, but I don't think it's a crime. Well, there's two issues, and one issue relates to the scheme that took place. He did not admit anything within the statute of limitations. Everything that happened after the crime was committed basically is within the statute of limitations. Those are the letters that were sent out after. No, I understand that, but he, it seems, I thought, and maybe I'm incorrect in this, that he agreed that he sent them. He just said that there was nothing wrong with them, they weren't criminal. The letters afterwards? Right. I don't know that he ever mentioned specifically letters. He just said that afterwards they tried to mitigate the damages in the case, that they tried to buy back the equipment that they offered to set them up with other servicers after they told everyone that the business had failed. So he's, from his standpoint, and I'm not saying whether he's guilty or not guilty, but from the position of a plea in which one of the critical elements for the plea is the actual mailing requirement. And that mailing requirement, although it kind of sometimes seems silly to us when we're looking at these big pleas when it's some kind of miscellaneous letter, it's important. And Mr. Flesher was never asked the question, did you send any of, did you send this particular letter in furtherance of the plea? Well, let's assume that you're correct that the district court should have teased out more facts before accepting the plea. I'm still wondering why your client would be entitled to relief, because it seems that if one thing seems clear from the record, it is that he really, really wanted to plead guilty. And so the remedy would be to undo the guilty plea, but it seems to me that he truly wanted to plead guilty, and I see nothing that suggests that had everything been done more perfectly, he would not have pleaded. Well, he was not. He specifically said, and throughout this whole proceeding, he said that he, his whole transaction from the beginning, it was a failed business plan. It started out as a legitimate business. I understand that. I think, maybe I didn't make my question clear. What is there that would demonstrate that had the plea colloquy been more precise, he would have chosen not to plead guilty? I think if the Court had said, Mr. Flesher, did you send out this letter on September 5th, 2005, and he said, no, I mean, were you responsible for this, was this in furtherance of the crime, he would have said no. Now, I'm not saying whether that's right or wrong or he wouldn't have been guilty. But I know from my question that there was no objection there. There was no objection to the PSR. The PSR goes to things. And the Court specifically asked him if he pled guilty to the 17 counts in the indictment. So it's a little bit incredulous to claim here that it's almost like you're trying to say he didn't know that he was, you know, most people aren't in Federal court. Most people aren't pleading guilty to 17 counts in an indictment and have a lawyer and there's a PSR and all of those things. It is not uncommon. I mean, I think most of us here didn't fall off the turnip truck just yesterday. And particularly if you've taken pleas, a lot of times people don't want to say everything. And so they start with the lawyer says, well, he doesn't really admit to everything that the government says that he does. But he still pleads guilty to 17 counts in the indictment. No one objects to anything. And now all this time later, then suddenly he's not guilty. Well, he could have said he was not guilty right that day and gone to trial. That's not what he said. So, and if he had a lawyer and he, you know, yeah, he kind of danced around a little bit, but he ultimately said, yeah, I'm pleading guilty to the 17 counts of the indictment and the 17 counts. First of all, he didn't dance around. He consistently said from the time of his plea, through, during the plea colloquy, he said to the probation officer that he, what he was pleading guilty to. He said it in his sentencing documents what he was pleading guilty to. He said it at the sentencing hearing what he was pleading guilty to. He said he was pleading guilty to sending out the false revenue statements. Now, I don't know when he read the indictment, if he read it any time close to this time, maybe it was just a guilty conscience that he thought the 17 charges were actually because of sending out the revenue statements. There were probably hundreds of revenue statements, and then there was also the virus letter. But those were all things that he was admitting that were wrong and fraudulent in this case. But he was not admitting the scheme, and that's pretty clear. He didn't say that this was a scheme. This was a failed business plan that ended up with some criminal activity. That's just what the judge said in this case. And in the sentencing, the judge says to him, in the middle of his statement in sentencing, the judge says to him, sir, are you not taking responsibility for what you did in this case? And he said, yes, I am. I'm taking responsibility for these particular letters. Now, I don't know. He obviously, he thought that the letters that the counsel in the indictment were because of those letters. His lawyer seemed to think it was because of those letters. The prosecutor seemed to think that those letters formed a substantial basis for the mail fraud. Remember, this is mail fraud. This case would not stand without some letters there. And I know from my client's statements that have been made throughout this case that he would not have pleaded guilty if he had realized he was pleading guilty. Sotomayor, where in the record do we see that he would not have pleaded guilty, that there's even a hint that he wouldn't have pleaded guilty if the colloquy had been more detailed? I don't think it's here. I don't think he said, came out and said that. But where's the hint? There's a hint. He wanted to take responsibility. That's what he said. He wanted to take responsibility for sending out the fraudulent statements. And he said it specifically when the Court asked him to, after Mr. Lannon read his statement in the plea colloquy, he said it there. The judge said, you're hesitating, sir, about pleading guilty. And he said, I am taking responsibility, after the judge had talked about all the bad conduct, and he said, I'm taking responsibility for those particular nailing those particular letters. He also said he was taking responsibility for the 17 counts. Right. But we don't know what those he – there's no way in the record to support a guilty plea and 210 months in prison for a statement, a general statement like that. Well, what was – what did the PSR recommend? The PSR recommend? What did the PSR say about his sentence? The PSR was longer than – was a little – And the PSR had all – had the statements of the offenses in it, and counsel – there was no objection to the – the Court specifically asked if anyone had any objection to the PSR. There was no objection to the PSR. But unlike the situations where the PSR forms the basis for a – for a guilty plea, he did not make any admissions. If you look at the PSR, the PSR says specifically what he was willing to plead to. Once again, it was the fraudulent statements. Also, I don't know of anything that says that the PSR can be factual – of the factual basis for anything but the sentence itself, as opposed to as a basis for a guilty plea, as fact-sufficient for a guilty plea. Now, maybe I'm wrong. I did look it up, and I tried to see if there was anything that says that an unobjected to PSR factual findings could possibly support it. What was his exposure on this case relative to the sentence that he received? He was 235, I believe. Well, 210 to 262 is the guideline range. Right. He got the low end of the guideline range of 210. 210. And isn't he mainly upset that his brother and girlfriend got a lot less sentence than he did? I don't think so. One got 48 months, one got 72 months, and he gets 210 months. Well, I think part of the reason he got the 210 months, as opposed to them who all did the same thing, was because of his – the statements that he had made during the sentencing, where he adamantly refused to admit that he had done anything but send out these particular statements. Now, if you look at the – But so now you're saying the sentencing was punitive? Well, I'm just saying that I don't know. I don't know what the court's – I didn't see that argument in your brief that it was punitive. Well, I argued in the brief that it was much longer and there was abuse of discretion unreasonable. Right. You said it was disproportionate, but you didn't say it was convicted. Well, as I'm looking at it, and I'm not making that argument specifically, I'm just saying that it's possible that his adamant refusal at the end of the sentence may have – I don't know that it was punitive. But I'm just saying that that – that it seemed that the judge – judges, and I did put this in the brief, that his position at the beginning of sentencing was a lot different at the end of sentencing for Mr. Flesher, at least, after he made his statement. Counsel, you've used your time, but we asked a lot of questions, so you'll get a short amount of rebuttal as well. Thank you. We'll hear from the government. Good morning. Sarah Heidel on behalf of the United States. May it please the Court. The defendant here has not met a very high burden of establishing a reasonable probability that but for the alleged Rule 11 violation, he would not have entered the guilty plea in this case. First, there was no error at the change of plea hearing. The defendant admitted the essential elements of this scheme to defraud, and he admitted the 17 mailings. Well, he sort of admitted it. It's a little bit like my example about the bank robbery. He said, well, I'm pleading guilty, but really all the – only bad thing I did was these earlier things. I don't think that's and the court didn't really do very much to elicit facts. You know, the lawyer interceded and said, well, you know, he's not really going to admit to all these facts, and there was some back and forth, but it seemed fairly insufficient to me. He did admit the essential elements of the scheme. He didn't admit the entire scheme as it was charged, but he certainly hit on the – on enough of the scheme to cover the essence of the scheme that was charged. Well, because the prosecutor's statement was the indictment is charged in 17 counts and not every count relates to the mailing of a statement. Why didn't that put the district court on notice that it should probe a little more into Mr. Flesher's general admission to determine there was a sufficient factual basis? I think it did, and perhaps what the panel is struggling with is that although it put him on notice, the district court did not – still addressed it only in a rather general matter. Did you do the 17, the conduct charge in the 17 counts and didn't get into the specifics? And that normally would not do for a factual basis. If somebody said, yes, I committed a bank robbery, I think you would still want to know, was it this bank and was it this day that's charged and other things about it. Typically, the Rule 11 is a lot more complete than this. Typically, and this was an unusual plea in that it was without a plea agreement. It was an open plea, and I would agree that typically you would want more, but I do think that this was enough in this case to cover, partly because of the way the mail fraud statute works, which is you have a scheme and then you have these mailings, which are mostly jurisdictional, in furtherance of the fraud. In a typical factual basis where you're talking about mailings made in furtherance of a mail fraud scheme, you're not spending a lot of time in the factual basis about how you're going to prove your mailings. Sotomayor What if he had said in response to the district court, if the district court had questioned him, here are 17 mailings, I'm going to go through each of these, did you – were you at all involved in any way in having this letter mailed, even assuming that you think it wasn't fraudulent, were you involved in the mailing? And if he said, no, I was in a coma for four months during the time when all those things were mailed, there wouldn't be a factual basis for the plea. So, you know, at least in theory, one would think there should be more here. So I'm not going to argue that that wouldn't have been preferable, but what I will argue is that to the extent that the defendant is saying I had no idea what the government had charged me with or what I admitted at that change of plea hearing, that is not borne out by the record in this case. And that is clear because afterwards when the PSRs disclose to the parties, the 17 mailings are listed in there verbatim as they appeared in the indictment, and he never says, hold on, I didn't do that conduct. Sotomayor Except that doesn't substitute for a Rule 11 conclusion. Sherry It doesn't substitute, although there is case law that the court can supplement a factual basis with the entire record available to it. There is case law on that. And if we're going to move to the plain error review where he's going to show prejudice, he can't, because he was on notice. Sotomayor That seems like the, just speaking for myself, your strongest argument, which is that there's no prejudice to him here. Sherry And if that's where we need to end up, that would be that, you know, I'd be happy with that, because those 17 counts are listed in the PSR, he never objects. That same conduct is described in less particularity, but in some detail in the offense conduct portion of the PSR. That is, I'm thinking it's approximately paragraphs 11 through 14 of the PSR, which is entitled offense conduct and talks about the sorts of things that the defendants engaged in as part of the conduct, and it includes these buyback letters. And the ---- Sotomayor It's got to paragraph 4 of the PSR, I believe. Sherry I'm sorry. I'm sorry. Sotomayor But that's okay. You know what? We can find it. Sherry I also, I want to correct the record in a couple of places. Not all of these letters relate to this buyout or the leaseback. Count 5 is a revenue statement, is a check for revenue statement. That's clearly part of the fraud that he admitted. And there are also mailings included in this indictment that purport to confirm purchases of the ad toppers. So to the extent that it's been represented that this is all conduct that was outside what he admitted, I would dispute that entirely. Kennedy But none of the counts related to the mailing of a false revenue statement, did they? Sherry One of them does, Your Honor. Count 5 does. Count 5, which was charged, is in paragraph 2 of the PSR, is described in the indictment as a check for $108 purportedly representing advertising revenue sent from DNE in Oxnard, California, to victim JJ. That's a false payment to an investor. That, I think, is squarely within what he admitted. Kagan Well, he does admit that because, well, there's a statement that's read, and then there's the court and the defendant then engaged in a colloquy in the court saying, did you realize what you were doing at the time telling the investors was not true? Yes, sir. Well, you hesitate a bit. Did you think what you were doing was legal? No, sir. It's the, I don't know how to, we, I, it, then when we presented this to the people, it was, as far as we were concerned, a legal business and we were doing the right things. And throughout the progression of the time, things went awry and we ended up sending out statements that were false. Then the court turns to you and says, let me ask the government if it would care to supplement the factual basis with regard to the defendant. And I think it was you that was there, right? That's correct, Your Honor. And so, well, yes, Your Honor. The indictment is charged in 17 counts and not every count relates to the mailing of a statement. So you said that. Yeah. There are other mailings that are covered, and I think to properly cover those counts, we have to acknowledge the other mailings more specific or generally. All right. Well, I certainly think in a general way, you understand that you're accepting responsibility conduct that is alleged in each of the 17 counts, sir. Defendant answers, yes, sir. Court, all right. I don't know what we need to do much more than that, given the statement of the factual basis that the defendant's attorney read into the record. And then he later confirmed, the defendant later confirmed he was pleading guilty. I did those offenses, Your Honor, no other reason. And then when asked if there was any objection to the PSR, the defendant's lawyer said he did not. And the court pressed the defendant for more information and said, so as you stand here today, you don't feel that you're criminally liable for any of these things in which you have been indicted? Your Honor, then the defendant says, I am responsible and criminally involved or plead that way because I sent them statements with false information on it. I agree with that. I did that. But I built the machine. I delivered it. Those machines were there. So that's kind of what there's a little. The court let him wiggle a little and backtrack a little, but he said he was guilty of the 17 counts. He did say that. He never directly confronted the he never directly contested that he's not guilty of those. But in the sentencing hearing, he definitely does try to minimize in a way that I might have been better to just say, hey, if you want to play here, if you want to equivocate, if you want to do all those things, just withdraw your plea. We've got jurors waiting downstairs. Let's go. At the change of plea hearing. Right. And then your point is there's no indication that at that point he really wanted to go to trial. He just wanted to waffle. That's correct, Your Honor. And I think that is borne out in the record where because he never tries to withdraw that guilty plea, he had opportunity to go to trial. He had opportunity. He never really contested those 17 counts at sentencing. He makes certain statements about trying to mitigate the damages. But he never says I didn't do those 17 things. I had no idea that that's what I was agreeing to. That is just not what happened. So what was his maximum exposure? His maximum exposure was actually. I mean, it wasn't just the guideline range, right? No. He pled to 17 counts with a 20-year stat max. I think it was 340. I remember that it was 340 months. That sounds low to me now. But it was significantly higher than the guideline range that he ended up with. And the district court departed one level in the criminal history and brought it down to a 210 low-end guideline range. If the Court's interested in sentencing, I can address that as well. You're out of time, and we have your brief on that topic. Yes, Your Honor. Thank you. Ms. Buchanan, we'll give you a minute for rebuttal. We used a lot of your time with questions. Okay. Just quickly, as far as the 17 mailings go, we've never seen the 17 mailings. There are hundreds of thousands of letters here. Some of the mailings actually came from alleged victims. So we don't know what is contained. And as far as count 5, who knows? Maybe there was $108 of actual revenue earned. They did place some of these machines. So when you say we have never seen, who's we? The record doesn't show. I'm sure that those statements, those 17 letters, are somewhere in the 40,000 pages of discovery, but they're not isolated anywhere. You can't tell for sure which letter is which. You know, you look at these big cases, and you can't until the prosecutor actually hands you a copy of the specific letter. They all can sound very similar to what is here. So they're not in the record. They probably are in the discovery. I don't know. I didn't look through all 40,000 pages. But they were not attached to anything. They were not presented to anything. We don't know what they say. Some of them are from the victims. So, Mr. Fletcher, may I? So you don't know what they say? No, I don't know what they say. So that's the we you're talking about. Right. Right. And, well, we, the people who are reviewing the record, don't know what they say. That means all of us. So you were the – were you – who was with the defendant when he took – when he entered the plate? His trial counsel. I'm appellate counsel. Thank you, counsel. Thank you. I appreciate the arguments of both of you. They've been very helpful. And the case is submitted.
judges: Gilman, Graber, Callahan